**UNICORN DRILLING, INC., a Wyoming corporation, Appellant (Plaintiff),**

v.

**HEART MOUNTAIN IRRIGATION DISTRICT; The Board of Directors and Commissioners of the Heart Mountain Irrigation District; and Dean House, Appellees (Defendants).**

No. 98–122.

Supreme Court of Wyoming.

April 7, 2000.

Representing Appellant: R.E. Rauchfuss and Frank R. Chapman of Beech Street Law Offices, Casper, Wyoming.

Representing Appellees: Mark L. Carman of Williams, Porter, Day & Neville, P.C., Casper, Wyoming, and Michael McCarty and Mary Helen Reed of McCarty & Reed, Cody, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

THOMAS, Justice.

The major issue in this case is whether Unicorn Drilling, Inc. (Unicorn) has the right to use a section of a road, which is part of the canal works operated by Heart Mountain Irrigation District (the District), for access to its oil and gas operations. The district court granted a Motion for Summary Judgment presented by the District, and, at the same time denied a Motion for Summary Judgment presented by Unicorn. The district court concluded that Unicorn had failed, as a matter of law, to establish its right to use the road. The district court specifically ruled that Unicorn had failed to sustain its theories of easement by prescription, implied easement, and/or a license coupled with an interest because all of the theories would result in a private entity obtaining a right or interest in land held by a governmental entity through operation of law. We hold that the record encompasses genuine issues of material fact relating to the contractual rights of Unicorn to use the road; the acquisition of a right of use as a matter of law against the District; and the facts relating to the historic use of the road so that the entry of a summary judgment was not appropriate. The Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment is reversed, and the case is remanded for further proceedings in accordance with this opinion.

This statement of the issues is found in the Appellant's Brief:

A. Is Plaintiff entitled to access because an express, implied or quasi easement by grant or implication for ingress and egress into its Federal Oil and Gas Lease existed pursuant to *Mountain Fuel Supply Co. v. Smith*, 471 F.2d 594 (10th Cir.1973); *Kinney–Coastal Oil Company v. Kieffer*, 277 U.S. 488, 48 S.Ct. 580, 72 L.Ed. 961 (1928); and *Transwestern Pipeline Co. v. Kerr–McGee Corp.*, 492 F.2d 878 (10th Cir.1974)?

B. Does the trial court lack jurisdiction and is it preempted from taking away Plaintiff's right-of-way to a federal lease approved by the Department of the Interior?

C. Did the trial court err in granting summary judgment denying Plaintiff access to its federal oil and gas lease pursuant to the 1890 Canal Act (43 U.S.C. § 945) without evidence in the record that Plaintiff's use of the canal road interfered with or was inconsistent with the operation and maintenance of the canal or its delivery of water and only upon a finding that the fears of Defendants were "reasonable?"

D. Did the trial court err in granting summary judgment to Defendants since the locked gate and a major portion of the road are located on private property and an irrevocable license coupled with an interest was acquired by Plaintiff?

E. Did the trial court err in granting summary judgment to Defendants as Defendant Heart Mountain Irrigation District approved access or waived their rights to close the road, which equitably estops them from blocking Plaintiff's access and are they barred by the statute of limitations or laches in blocking Plaintiff's usage of the canal road?

F. Did the trial court err in granting summary judgment to Defendants since the locked gate and the road are located on private property and a prescriptive easement exists?

G. Did the trial court err in granting summary judgment to Defendants because a county road or right-of-way across public lands exists pursuant to 43 U.S.C. § 932?

H. Did the trial court err in its finding that:

1. "Each of the legal theories propounded by Plaintiff would result in a private entity obtaining a right or interest in land held by a government entity?"

2. "Plaintiff has not established necessity for usage of the canal road?"

3. "The concerns of the Irrigation District are reasonable?"

I. Based on the record, is either party entitled to summary judgment as a matter of law?

This Statement of the Issues is found in the Appellees' Brief:

I. Did the district court have subject matter jurisdiction?

II. Do governmental statutes or regulations give Unicorn the right to use the canal road to access its federal mineral lease?

A. Mineral Leasing Act of 1920, 30 U.S.C. §§ 181, *et seq.;*

B. Canal Act of 1890, 43 U.S.C. § 945;

C. Unlawful Inclosures Act, 43 U.S.C. §§ 1061, *et seq.;* and

D. 43 U.S.C. §§ 932, (R.S. 2477) Repealed by Act Oct. 21, 1976, 90 Stat. 2793, and COUNTY ROAD.

III. Do the actions of Unicorn or Heart Mountain give Unicorn the right to use the canal road to access its federal mineral lease?

A. Express, implied or quasi easement.

B. Irrevocable license coupled with an interest.

C. Equitable estoppel, waiver, laches.

This dispute developed between the lessee under a federal oil and gas lease, Unicorn, and an irrigation district, Heart Mountain, which has contracted with the United States to operate and maintain, and eventually to acquire, the reclamation and irrigation project. The history of the competing interests, both deriving their rights from the same sovereign, is of assistance in gaining a perspective for the contentions of the parties.

Early in the twentieth century, the United States Congress authorized reclamation and irrigation projects in the Reclamation Act of 1902. In 1916, the Secretary of the Interior withdrew Sections 7 and 8 of Township 53 North, Range 101 West, the land that encompasses the road and the oil wells in this case, from public entry. These lands were withdrawn in connection with the implementation of the Shoshone Reclamation Project. In 1938, the United States built the Heart Mountain Canal, a part of the Shoshone Reclamation Project, through Sections 7 and 8. The section of the canal road at issue closely parallels part of the canal, and it also was constructed in 1938. Since its construction, the road has been used in the operation and maintenance of the canal. On December 1, 1958, the United States and the District signed a contract for the operation and maintenance of the Heart Mountain Canal, which also provided for its eventual transfer to the District.

In 1920, the United States issued a prospecting permit to a group of individuals, allowing them to search for oil and gas on the subject land. On July 18, 1938, the same year that the Heart Mountain Canal and the canal road were built, the United States issued the first oil and gas lease on the subject land to one of the individuals named in the prospecting permit. That person, in turn, sold his interest in the lease to Husky Oil Co. on August 25, 1943. Husky Oil completed a well in 1962, and another in 1963. Husky Oil then sold its interest to Marathon Oil, which sold its interest to Unicorn on August 7, 1992. The section of the road in dispute lies entirely within the boundaries of Unicorn's lease. Since 1962, Unicorn and its predecessors have driven tanker trucks over the canal road to reach the wells and transport oil from them. It is the only road that has been used by the oil and gas lessees.

By two separate patents, one in 1956 and one in 1957, the United States granted parcels of land in Sections 7 and 8 to a homesteader, reserving the oil and gas, the right to prospect and remove the oil and gas, and a right of way for canals. Those two parcels, after intervening conveyances, were acquired by the present owner on January 23, 1978. Portions of the canal road and a second road that reaches Unicorn's wells and storage tanks road, alluded to as the alternate road, are located on that land. On October 21, 1988, the current owner granted the District an easement to use the canal road for operation and maintenance of the canal.

District officials asserted that they first became aware that Unicorn was using the canal road to haul crude oil in tanker trucks in the summer of 1994. That information led to a concern that a tanker truck accident might result in an oil spill in the canal and contamination of thousands of acres of crops. A District employee contacted Unicorn to ask that the trucks use the alternate road, but

Unicorn refused, saying the alternate road had two sharp turns the heavy trucks could not safely negotiate, was blocked by snow much of the winter, and was under water when the property owner irrigated. The District was not able to negotiate a satisfactory solution with Unicorn, and the District constructed a gate across the road, which it locked in October of 1995. The gate was located on the land of the present surface owners, apparently because it was the most convenient site. Unicorn and its predecessors in interest had a lease agreement with the surface owners which permitted the use of the land for all purposes necessary or convenient with the exercise and enjoyment of its rights under the federal lease.

Unicorn filed a Petition for Preliminary and Permanent Injunction on November 20, 1995, asking the district court to enjoin the District from barring Unicorn's access to the canal road. The district court issued a temporary restraining order on March 6, 1996. After extensive briefing, a hearing, and a viewing, the district court granted summary judgment to the District. The district court determined that there were no issues of material fact, and that each theory upon which Unicorn sought relief would impermissibly result in Unicorn obtaining a right or interest in land held by a governmental entity. The district court also found as a fact that the District's concerns over a possible oil spill into the canal were reasonable. Unicorn filed a timely appeal with this Court.

■ Recently, we summarized our review function in cases involving summary judgments in this way:

> Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. *Mountain Cement Co. v. Johnson*, 884 P.2d 30, 32 (Wyo. 1994); W.R.C.P. 56(c). We review a summary judgment in the same light as the

district court, using the same materials and following the same standards. "We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record." *Four Nines Gold, Inc. v. 71 Constr., Inc.*, 809 P.2d 236, 238 (Wyo.1991). Summary judgment serves the purpose of eliminating formal trials where only questions of law are involved. *Blagrove v. JB Mechanical, Inc.*, 934 P.2d 1273, 1275 (Wyo.1997); *England v. Simmons*, 728 P.2d 1137, 1141 (Wyo. 1986). We review a grant of summary judgment by deciding a question of law de novo and afford no deference to the district court's ruling on that question. *Sammons v. American Auto. Ass'n*, 912 P.2d 1103, 1105 (Wyo.1996); *Blagrove*, 934 P.2d at 1275.

*Gray v. Norwest Bank Wyoming, N.A.*, 984 P.2d 1088, 1091 (Wyo.1999). A material fact is any fact that, if proved, would have the effect of establishing or refuting an essential element of a claim or defense asserted by a party. *Century Ready–Mix Co. v. Campbell County School Dist.*, 816 P.2d 795, 799 (Wyo. 1991).

This case is an unusual real property dispute because neither party claims to own the surface of the land. Instead, Unicorn and the District each claim a non-possessory interest in private land each of which originated from the federal government. Pursuant to 43 U.S.C. § 945,[1] the United States has a perpetual easement over the private owner's land for construction, maintenance, and operation of the canal. *Northern Pac. Ry. Co. v. United States*, 277 F.2d 615, 618, *appeal dismissed*, 287 F.2d 884 (10th Cir.1960); *Green v. Wilhite*, 14 Idaho 238, 93 P. 971, 973 (1908). The United States has assigned its right of way under 43 U.S.C. § 945 to the District. The parties agree that, pursuant to 43 C.F.R. § 3101.1–2,[2] Unicorn has the right

---

1. 43 U.S.C. § 945 reads:

   In all patents for lands taken up after August 30, 1890, under any of the land laws of the United States or on entries or claims validated by this act west of the one hundredth meridian, it shall be expressed that there is reserved from the lands in said patent described, a right of

way thereon for ditches or canals constructed by the authority of the United States.

2. 43 C.F.R. § 3101.1–2 reads, in relevant part:

   A lessee shall have the right to use so much of the leased lands as is necessary to explore for, drill for, mine, extract, remove and dispose of all the leased resource in a leasehold[.]

to access its oil and gas lease and to transport the oil. The dispute places in question the District's right to prevent Unicorn from using the canal road.

 The District's right-of-way is not exclusive; the landowners and third parties with the landowners' permission may use the road if their use is not inconsistent with the operation and maintenance of the canal. The United States Department of the Interior also has the right to reach the canal for inspections. As a matter of law, we hold that Unicorn, as a federal lessee, is within the class of parties who may use the canal road, provided they do so in a manner consistent with the operation and maintenance of the canal. Thus, the question becomes not whether Unicorn can acquire an easement against the federal government, but whether Unicorn's use of the road is consistent with the operation and maintenance of the canal.

 That question is an issue of fact, and it concerns a material fact. The question cannot be resolved merely because the District says Unicorn's use is not consistent with the operation and maintenance of the Heart Mountain Canal. The district judge went to the land in question to view the canal road and made a factual finding that the District's concerns about an oil spill were reasonable. The record, however, contains substantial evidence, admissible at a trial, that Unicorn and its predecessors in interest had used the canal road for the same purpose for a long number of years without any adverse consequences. The district court did not explain how its viewing, or any of the evidence presented, supported the finding that the concerns of the District were reasonable. We find nothing in the record demonstrating the reasonableness of the concern. The only evidence presented on the potential for an oil spill was to the effect that there is "no real probability that an oil truck would go into the canal" and that in the unlikely event one did, there is "no reasonable probability the vessel would rupture or spill oil into the canal."

Since an unresolved genuine issue of material fact exists as to whether the continued use of the canal road by Unicorn is consistent with the operation and maintenance of the canal, we hold that summary judgment was not appropriate in this case. The Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.